UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| PSM HOLDINGS LLC; PSM WORLDWIDE LLC, | Case No. 3:24-cv-05579-TMC |
| Plaintiffs, | ORDER DENYING MOTION TO DISMISS |
| v. | |
| TINY TOWN LLC; SURAPHA NELSON; LUCAS NELSON, | |
| Defendants. | |

## I.    INTRODUCTION

This case arises out of an intellectual property dispute between Plaintiffs PSM Holdings LLC and PSM Worldwide LLC  (collectively "Plaintiffs") and Defendants Tiny Town LLC, Surapha Nelson, and Lucas Nelson ( collectively "Defendants"). In 2014, Plaintiffs opened a children's play facility—Play Street Museum or PSM—in Texas. After ten years, Plaintiffs have expanded, opening facilities in several states across the country. During this time, Plaintiffs pursued both trademark and trade dress protection, enabling them to safeguard their all-white, minimalist aesthetic. In 2024, Defendants opened a new children's play facility, Chicky Play Museum, just a few miles from a PSM location. Plaintiffs allege that Chicky Play Museum's

aesthetic mirrors Plaintiffs' locations. Plaintiffs claim that Defendants copied this aesthetic, and in doing so, infringed Plaintiffs' trade dress and trademarks.

On July 18, 2024, Plaintiffs filed a complaint against Defendants, alleging 1) trade dress infringement; 2) federal service mark (trademark) infringement; 3) federal unfair competition; 4) common law trade dress infringement; 5) common law deceptive trade practices; 6) Texas common law unfair competition and misappropriation; and 6) Washington Consumer Protection Act violations. Dkt. 1. Defendants moved to dismiss, Dkt. 15, and Plaintiffs amended their complaint. Dkt. 20. Defendants moved to dismiss Plaintiffs' second complaint, alleging that the complaint fails to sufficiently inform Defendants of the facts to support each of these claims. Dkt. 27. Defendants argue that the complaint does not provide sufficient notice of the elements of Plaintiffs' claimed trade dress and fails to adequately plead related claims. *Id.* The Court concludes that Plaintiffs have met the pleading requirements for each of their claims. Thus, the Court DENIES Defendants' motion to dismiss.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Play Street Museum's Child Play Facilities

Plaintiffs Play Street Museum (PSM) Holdings, LLC and PSM Worldwide, LLC (PSM Franchisor) "are upscale and educationally focused children's play facilities, targeted primarily to children ages one through eight, to provide entertainment in a stimulating learning environment of creative and dramatic play." Dkt. 20 at 1. The company was created in 2014 in Frisco, Texas. *Id.* ¶ 8. Its creator found the market for children's museums and play facilities lacking, as they were "overwhelming . . ., often-chaotic" in format, "attempting to cater to ages from infant to teen[.]" *Id.* ¶ 9. Indoor facilities relied on "bright, primary colors and a 'rough-and-tumble' design." *Id.* Plaintiffs sought to be something different. Plaintiffs "designed PSM

Locations in a unique fashion that has distinguished and separated its services from other competitors and their offerings in the marketplace." *Id.* ¶ 10.

Plaintiffs thus created a children's play space "based on minimalist elements." *Id.* ¶ 11. In their pleadings, Plaintiffs explain that they created a space with several "minimalist" features, such as "a background of white walls, cabinetry, shelving, countertops, trim, exposed ductwork, ceilings and décor," "an entryway with a white service counter with white shelving perpendicular to the counter on both sides in a horseshoe pattern," "a black, child-sized slotted gate between the one of the entryway shelving units and the service counter that swings open for entry to the play area," "brown, vinyl wood flooring," "prominent checkerboard carpet squares in two shades of green in the middle of the play space," "blue carpet flooring surrounding the play boat installation," and white tables, benches, buffets, cabinets, and built in shelving. *Id.* Play buildings are constructed to "mimic real-life constructions" along the perimeter of the play area. *Id.* Play buildings can be organized around different themes. *Id.* ¶ 14. And all PSM locations have a "block and play area at the front of the facility with geometrically-patterned indigo, grey, and beige carpeting[.]" *Id.* ¶ 24. This area features "educational displays in a gray, framed chalkboard" and "wooden play toys and blocks for younger children." *Id.*

Plaintiffs explain that, "[t]raditionally, children's indoor play facilities were fully carpeted or utilized rubber-cushion flooring and were decorated in a spectrum of vibrant colors, not white with brown, vinyl wood flooring throughout and carpet used as an accent in the play spaces." *Id.* ¶ 12. Plaintiffs claims that these features, alongside several others, have created a "distinctive aesthetic" that differentiates PSM from other children's play facilities. *Id.* ¶¶ 12–13.

Plaintiffs first opened a location in Frisco, Texas. *Id.* ¶ 8. This was followed by locations in Plano and McKinney, Texas. *Id.* ¶ 14. PSM Franchisor now has twenty-five franchised PSM Locations open and operating (in addition to two PSM Locations operated by affiliates of PSM

and PSM Franchisor). *Id.* ¶¶ 16, 21. Seventeen additional franchised locations are under development and will soon be open. *Id.* ¶ 21. Plaintiffs' franchisees currently operate educational PSM Locations in Texas, Colorado, Missouri, Arkansas, Georgia, New York, Maryland, Oregon, and Washington under the Plaintiffs' Marks and with the Plaintiffs' Trade Dress, with additional locations preparing to open in California, Florida, Illinois, New Jersey, and Virginia. *Id.* ¶ 17.

As each of these locations has opened, Plaintiffs allege that they "reinforced" their claimed trade dress "through deliberate and consistent implementation." *Id.* ¶ 14. They explain that each element of the facilities repeats the PSM trade dress with only slight variations. *Id.* For example, regardless of whether a franchisee chooses PSM's "Town Square variant" or their "Great Outdoor theme," the trade dress still includes:

> white walls, ceilings, furniture, and millwork; the entry area with the slotted black gated and retail space; brown vinyl, wood-look flooring; two-tone, green checkerboard carpet squares surrounded by play buildings and vehicles along the perimeter walls of the space; and a variety of standalone toy areas, like a train table, an art wall, and the Discovery Rug and block area.

*Id.* ¶ 14. Plaintiffs explain that, to do this, they have "created proprietary designs" for these play structures, buildings, and other design theme elements. *Id.* ¶ 15. PSM sourced equipment, toys, and play pieces to fit the design. *Id.*

To protect this intentional design, Plaintiffs pursued both trademarks and trade dress applications with the United States Patent and Trademark Office (USPTO). *Id.* ¶ 18–19; Dkt 20-1. Plaintiffs secured trademarks, including for their name and stylized logo. Dkt. 1 ¶ 18. Plaintiffs applied to register certain elements of their trade dress with the USPTO, specifically:

> The color(s) white, brown, black, indigo, grey, beige and green is/are claimed as a feature of the mark. The mark consists of the distinctive design and layout of a store with a retail area that is combined with a children's educational/entertainment space. The store features an entry area at the front featuring a white entry check-in kiosk with a white countertop and white retail shelving in a horseshoe pattern. The entry area is separated from a larger exhibit area by a black, child-sized slotted gate. In the exhibit area, along the side wall at the front is a grey framed chalkboard

featuring interactive components, mounted above brown shelving. Further back along the same wall, there is a white buffet with a white rectangular backboard with four white child-sized rectangular tables and white benches perpendicular to the buffet. Child-sized, individual play building exhibits are oriented around the three perimeter walls of the exhibit area. The walls are all in white. The flooring is brown throughout the entire location with green carpet squares covering the center of the exhibit area and indigo, grey, and beige carpet squares located in the front area of the exhibit space. The elements that appear in dotted lines are not claimed as individual features of the mark; however the placement of the various items are considered to be part of the overall mark. The white within dotted lines represents background areas and is not part of the mark.

*Id.* ¶ 19. Though this application was rejected, Plaintiffs resubmitted it. *Id.* ¶ 20. In their Response to Office Action filed July 24, 2024, Plaintiffs amended their application "from the Principal Register to the Supplemental Register, thereby agreeing that those elements of the PSM Trade Dress that were included within the Application Trade Dress are not inherently distinctive." *Id.* They do, however, contend that they have acquired "secondary meaning" in the market. *Id.*

## B.    Defendants' Chicky Play Museum

In May 2024, Defendant Tiny Town LLC, and its owners Defendants Surapha Nelson and Lucas Nelson, opened "Chicky Play Museum"—an indoor children's play facility. *Id.* ¶¶ 3–5, 27. Plaintiffs allege that Defendants' facility is "essentially identical to a PSM Location[.]" *Id.* ¶ 27. Before opening the business, Mrs. Nelson visited the PSM location in Beaverton, Oregon several times in 2022 and 2023. *Id.* ¶¶ 28, 29, 31. And in January 2023, Mrs. Nelson contacted PSM Franchisor to inquire about franchise opportunities in Washington. *Id.* ¶ 29. In March 2023, Mr. Nelson followed up, expressing continued interest, and asking for the franchise disclosure document. *Id.* ¶ 30. A PSM employee sent the franchise disclosure document but never heard back from the Nelsons. *Id.* Soon after, Mrs. Nelson again visited the Beaverton, Oregon PSM location. *Id.* ¶ 31.

On January 16, 2024, the Nelsons formed Tiny Town, LLC. *Id.* ¶ 32. That March, Mrs. Nelson visited the PSM location in Happy Valley, Oregon. *Id.* ¶ 33. And on May 14, 2024, the Nelsons opened Chicky Play Museum in Vancouver, Washington. *Id.* ¶ 33. Chicky Play Museum is around 8 miles from the PSM Location that recently opened in Vancouver, Washington; 24 miles from the Beaverton, Oregon PSM Location; and about 22 miles from the Happy Valley, Oregon PSM Location. *Id.*

**C.    Plaintiffs Allege that Defendants Appropriated their Trade Dress**

Plaintiffs claim that Defendants copied PSM's claimed trade dress. Plaintiffs allege that the name and logo are "confusingly similar," using the words "play" and "museum" in that order and using an "almost identical font[.]" *Id.* ¶ 35. And Plaintiffs allege that Defendants "copied the overall layout, design, and trade dress of PSM [.]" *Id.* ¶ 36. The copied elements include:

- Background of white walls, ceiling, cabinetry (flat front tops and shaker cabinets below), shelving, countertops, trim and functional décor with what appears to be the exact color of brown, vinyl wood flooring;

- windows along the front wall;

- prominent checkerboard carpet squares in two shades of green in the middle of the space with similar play buildings sourced from the same manufacturer arranged around the green carpet along the perimeter walls;

- buildings designed to copy the non-functional design elements of a PSM Location's play buildings, such as a 'grocery store' with a three-windowed second floor, with all white horizontal siding and brightly colored awnings above the windows;

- identical exhibit and play components designed to mirror the elements of PSM's play buildings even though alternative elements are available, including an identical play fire engine vehicle, an identical wooden boat with fishing toys, identical play components within the play buildings (such as the cash register, scanner, and checkout aisle signage in the grocery store building and the refrigerator, stove, and dining furniture in the home, among others), air tubes, and train table;

- numerous identical or near-identical toys, including a rainbow on top of a natural wood shelving unit, natural wood play vehicles, large dinosaurs, and pat bells, all displayed on a similar geometric carpeted area at the front of the facility; and

- black, vinyl removable capital lettering placed on wooden slats.

*Id.* ¶ 37. Throughout, Plaintiffs provide comparative photographs:



1

2

3

4

5

6

7

8

9

10










11

12

13

14

15

16

17

18

19

20

21

22

23

24

Plaintiffs further claim that "Defendants have sourced the items . . . in their location from the exact same vendors as those used by PSM Locations despite" many other options. *Id.* ¶ 38. Some items are the "exact same products that were carefully selected by PSM to create the PSM

Trade Dress." *Id.* Plaintiffs also allege that Defendants copied PSM's business and operations, including their reservation system, play passes, party options, legal waivers, and other practices. *Id.* ¶ 39.

Plaintiffs allege that Defendants' appropriation of their trade dress has harmed their business, causing confusion among consumers. *Id.* ¶ 45. Chicky Play Museum was brought to PSM's attention by "several customers of the franchised Happy Valley, Oregon PSM Location, who commented on the stark similarities between the two locations." *Id.* And on one occasion, a customer made a reservation at Chicky Play Museum, thinking they were actually making a reservation at a PSM location. *Id.* ¶ 46. The customer arrived at the PSM in Happy Valley, Oregon "for a playtime reservation with a printed confirmation of their reservation that was actually made for a playtime reservation at Chicky Play Museum." *Id.*

On June 25, 2024, Plaintiffs sent Defendants a demand letter requesting that Defendants either immediately shutter their facility in Vancouver, Washington and/or change their name, features, and configuration of features to distinguish their business from PSM. *Id.* ¶ 42. *See also* Dkt. 20-3. Defendants did not comply. Dkt. 20 ¶ 43. After the nonresponse, Plaintiffs sued Defendants, alleging 1) trade dress infringement, 2) federal service mark infringement, 3) federal unfair competition, 4) common law trade dress infringement, 5) common law deceptive trade practices, 6) Texas common law unfair competition and misappropriation, and 7) violation of the Washington Consumer Protection Act. *Id.* at 25–30. Plaintiffs ask that the Court permanently enjoin Defendants from using the infringing materials, require that they remodel their Vancouver location, and award damages. *Id.* at 31–32.

Defendants first moved to dismiss Plaintiffs' complaint on October 4, 2024. Dkt. 15. They alleged that the complaint contained multiple conflicting statements and failed to provide adequate notice about the claims alleged. *See id.* at 3–7. In response, Plaintiffs submitted their

First Amended Complaint, now the operative complaint, on October 25, 2024. Dkt. 20. Plaintiffs also responded to Defendants' first motion to dismiss. Dkt. 21.

On November 1, 2024, the Court denied Defendants' first motion to dismiss as moot because Plaintiffs had filed an amended complaint. Dkt. 23. On November 15, 2024, Defendants moved to dismiss the amended complaint. Dkt. 27. Plaintiffs responded on December 13, 2024. Dkt. 30. Defendants replied on December 27, 2024. Dkt. 31. The motion is ripe for the Court's consideration.

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Rule 12(b)(6) motions may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation omitted). To survive a Rule 12(b)(6) motion, the complaint "does not need detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

The Court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party," *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014), but need not "accept as true a

legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555. "[A] plaintiff's

obligation to provide the grounds of his entitlement to relief requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do."

*Twombly*, 550 U.S. at 555 (internal quotation marks omitted). "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*,

556 U.S. at 678.

## IV.    DISCUSSION

### D.    Trade Dress Infringement

The Lanham Act, 15 U.S.C. § 1125(a)(1)(A), protects a company's trade dress.

*Millennium Lab'ys, Inc. v. Ameritox, Ltd.*, 817 F.3d 1123, 1126 (9th Cir. 2016). Trade dress is

the "total image of a product," including size, shape, color, textures, and graphics. *Id.* (quoting

*Disc Golf Ass'n v. Champion Discs, Inc.*, 158 F.3d 1002, 1005 n.3 (9th Cir. 1998)); *see also*

*adidas Am., Inc. v. Skechers USA, Inc.,* 890 F.3d 747, 754 (9th Cir. 2018) ("Trade dress

protection applies to 'a combination of any elements in which a product is presented to a buyer,'

including the shape and design of a product.") (citations omitted). Because trade dress is "the

composite tapestry of visual effects," a court should not focus on individual elements, "but rather

on the overall visual impression that the combination and arrangement of those elements create."

*Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001) (explaining that

the Court must examine the trade dress as "a whole, not by its individual constituent parts").

Still, a plaintiff claiming trade dress infringement must lay out the individual elements

comprising its trade dress. *Health Indus. Bus. Commc'ns Council Inc. v. Animal Health Inst.*, 481

F. Supp. 3d 941, 951–52 (D. Ariz. 2020) (holding that a plaintiff should "clearly articulate its

claimed trade dress to give a defendant sufficient notice.") (citation omitted); *Tangle, Inc. v.*

*Aritzia, Inc.*, 125 F.4th 991, 999 (9th Cir. 2025) (affirming dismissal of trade dress complaint

when the plaintiff "failed to provide a complete recitation of the concrete elements that it contended constituted its protectible trade dress," and finding that "merely providing photographs of some products and partial descriptions is insufficient"). To "provide adequate notice to the defendant," a "complete recitation of the concrete elements is required." *YZ Prods., Inc. v. Redbubble, Inc.*, 545 F. Supp. 3d 756, 767–68 (N.D. Cal. 2021). Courts in the Ninth Circuit have thus held that "images and descriptions . . . of some . . . products are alone insufficient to put [the defendant] on notice of the asserted trade dress"; rather, the plaintiff must detail the individual elements that comprise the "total appearance" that Plaintiff claims is trade dress. *Id.* at 767 (citing cases).

As a result, trade dress claims often "involve intensely factual issues[.]" *YZ Prods.*, 545 F. Supp. 3d at 767 (quoting *Arcsoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057, 1070 (N.D. Cal. 2015)). Consequently, courts in this circuit have held that many trade dress claims should not be resolved at the pleading stage "when the court has little more than the plaintiff's allegations and the defendant's summary denial of them." *Lepton Labs, LLC v. Walker*, 55 F. Supp. 3d 1230, 1240 (C.D. Cal. 2014). Rather, "[s]o long as a plaintiff has alleged a complete recitation of the concrete elements of its alleged trade dress, it should be allowed to proceed." *Id.*; *see also Blue Nile, Inc. v. Ice.com, Inc.*, 478 F. Supp. 2d 1240, 1244 (W.D. Wash. 2007) ("While plaintiff's failure to describe the elements of its trade dress with greater specificity in its complaint might prove fatal during later stages of this litigation, at this point, defendant has cited no authority for proposition that plaintiff cannot qualify its trade dress description as one seeking protection for the 'look and feel' of its website in response to a motion to dismiss.").

To state a claim for trade dress infringement, "a plaintiff must demonstrate that (1) the trade dress is nonfunctional, (2) the trade dress has acquired secondary meaning, and (3) there is a substantial likelihood of confusion between the plaintiff's and defendant's products." *adidas*

*Am., Inc.*, 890 F.3d at 754 (quoting *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009)); *see also Kendall–Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1046–47 (9th Cir. 1998).

Here, Defendants argue that Plaintiffs' trade dress infringement claim should be dismissed because "PSM's recitation of trade dress elements . . . continues to confuse and does not comport with the recitation in PSM's concurrently alleged . . . [USPTO] application or its subsequent amendment in response to its refusal by the USPTO." Dkt. 27 at 5. Further, they contend that aspects of Plaintiffs' claimed elements are functional. *Id.* And finally, Defendants argue that the complaint concedes that the PSM trade dress "is not inherently distinctive." *Id.* Rather, Defendant explains, "Plaintiff provides nothing more than a single allegation that PSM has continued to use the PSM Trade Dress since 2014, and then threadbare recitations in its claims that the trade dress has somehow acquired secondary meaning." *Id.* The Court disagrees, finding instead that Plaintiffs have provided sufficient details of the elements of its claimed trade dress and adequately pleaded the three prongs of a trade dress claim.

### 1.    *Defendants' Confusion Regarding Claimed Elements*

Defendants argue that there are conflicts between Plaintiffs' Trade Dress Application filed with the USPTO and the description of their marks contained in the pleading. *Id.* at 6. "The claimed elements cited in Paragraph 19 of the FAC are in fact *not* the elements claimed by the current state of the PSM Trade Dress Application. This leads to not only a confused claim as to the claimed trade dress, but one that internally contradicts itself just within the FAC." *Id.*

These claims are neither confusing nor contradictory. For example, in Paragraph 11, Plaintiffs claim that "an entryway with a white **service counter** with white shelving **perpendicular** to the counter on both sides in a horseshoe pattern" is part of their trade dress. Dkt. 27 at 6 (emphasis added by Defendants). In Paragraph 19, Plaintiffs claim a "white entry

check-in **kiosk** with a white countertop and white retail shelving **in a horseshoe pattern**" *Id.* (emphasis added by Defendants). Defendants urge the Court to find that these two descriptions are contradictory. *Id.* at 7–8. This is not persuasive. Both descriptions, absent Defendants' selective emphasis, describe a white entryway, with white shelving, and a white counter, arranged in a horseshoe pattern. There is no discrepancy here.

Similarly, Defendants argue that "a black, child-sized slotted gate between the [sic] one of the entryway shelving units and the service counter that swings open for entry to the **play area**" as described in Paragraph 11 is different from "[t]he entry area is separated from a larger **exhibit area** by a black, child-sized slotted gate" in Paragraph 19. *Id.* at 6 (emphasis added by Defendants). But the two both describe a black child-sized gate separating the entryway from the exhibit/play area. Defendants also argue that the claim in Paragraph 11 for "a background of **white** walls, cabinetry, **shelving**, countertops, **trim**, exposed ductwork, ceilings and décor" conflicts with the description in Paragraph 19: "walls, ceiling and trim are all in white [but] In the exhibit area, along the side wall at the front is a **grey framed** chalkboard featuring interactive components, mounted above **brown shelving**." *Id.* (emphasis added by Defendants). Again here, there is no conflict. The second simply adds in elements in one specific area. It maintains that the rest of the features are all white.

And Defendants contend that "brown, vinyl wood flooring" described in Paragraph 11 is "markedly different" from the statement "flooring is brown throughout the entire location" in Paragraph 19. *Id.* at 7. These two descriptions are scarcely different.

Defendants also note that certain elements are claimed in the pleadings that are not in Plaintiffs' USPTO application, such as "blue carpet flooring surrounding the play boat installation," "play vehicles," and "windows along the front wall." *Id.*

But Defendants misunderstand the purpose of Rule 12(b)(6). Dismissal under the rule is "appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests." *Sleep Sci. Partners v. Lieberman*, No. 09-04200 CW, 2010 WL 1881770, at *2 (N.D. Cal. May 10, 2010) (quoting *Twombly*, 550 U.S. at 555). A plaintiff should "articulate its claimed trade dress to give a defendant sufficient notice." *Id.* (citing cases).

Plaintiffs have done so. They have alleged trade dress featuring a white and brown aesthetic, interspersed with small pops of color, like the green and blue rugs. Dkt. 20 ¶¶ 11, 19. They have provided detailed descriptions, alongside photographs, of the elements of their claimed trade dress. *See id.* ¶¶ 11, 19, 35. Though some of these descriptions differ slightly from those in both of Plaintiffs' applications to the USPTO, the details are enough to provide notice to Defendants about the claimed trade dress. And while Plaintiffs must adequately plead the elements of their trade dress, it remains "crucial that [the Court] focus *not* on the individual elements, but rather on the overall visual impression that the combination and arrangement of those elements create." *Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*, No. CV 15-769 PSG (SSX), 2015 WL 12731929, at *3 (C.D. Cal. May 8, 2015) (quoting *Clicks Billiards, Inc.*, 251 F.3d at 1259). Plaintiffs have adequately pled the individual elements, but more importantly, they have pled quite clearly the "overall visual impression" that the elements create. *Id.*

Defendants rely on *Sleep Science Partners* in arguing that Plaintiffs failed to plead the elements of their trade dress. There, the court held that the plaintiff had not "clearly plead that it defines its trade dress as these three marketing components taken in combination. Nor has it alleged that these elements interact to create a particular visual impression." 2010 WL 1881770, at *3. The plaintiff "cataloged several components of its website," but failed to "clearly articulate[] which of them constitute its purported trade dress." *Id.* And the way the complaint

was written led the court to believe that the plaintiff intended to "redefine its trade dress at a future stage of litigation." *Id.* The plaintiff did not adequately define the elements that comprised their website's "look and feel" and thus failed to give the defendant adequate notice. *Id.*

In contrast, the "look and feel" of Plaintiffs' trade dress is clear. Defendants have sufficient notice of the claimed "visual impression." And while there are minor differences in Plaintiffs' pleadings here and in their application to the USPTO, the complaint does not create suspicion that Plaintiffs' trade dress will be "redefined" later in the litigation.

### 2.     *Prong One: Functionality*

The Court now turns to the three requirements of a trade dress claim, beginning with functionality. "Trade dress protection cannot be asserted for any functional features of a product." *Millennium Lab'ys, Inc.*, 817 F.3d at 1126–27 (citing 15 U.S.C. § 1125(a)(3)). Trade dress protection, like other intellectual property safeguards in the Lanham Act, "reflects a balance of considerations affecting the competitive process and consumer benefit." *Id.* at 1127. The intent of the statute is thus to prevent confusion without restricting "the availability and use of functional features that enhance the utility of the product." *Id.* (citing *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 28–29 (2001)).

A feature is functional "if the [product feature] is essential to the use or purpose of the article or if it affects the cost or quality of the article, that is, if exclusive use of the feature would put competitors at a significant, non-reputation-related disadvantage." *Qualitex Co. v. Jacobson Prods. Co., Inc.*, 514 U.S. 159, 165 (1995). "Multiple functional items may be combined into a non-functional aesthetic whole." *Health Indus. Bus. Commc'ns Council*, 481 F. Supp. 3d at 952 (citing *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 842 (9th Cir. 1987)).

By contrast, a product feature is nonfunctional "if it is not essential to the product's use and does not affect its cost or quality of the article." *Lepton Labs*, 55 F. Supp. 3d at 1238 (citing

*Fuddruckers*, 826 F.2d at 842). The "functionality analysis focuses on the product as a whole—not on whether any one particular element is functional." *Id.*

This necessarily involves a fact intensive inquiry. *Fuddruckers*, 826 F.2d at 843; *Simplehuman, LLC v. Volume Distributors, Inc.*, No. LACV2302219JAKASX, 2024 WL 1813511, at *7 (C.D. Cal. Feb. 15, 2024) ("Functionality is ordinarily not assessed on a motion to dismiss, which involves a parallel analysis to the one here, because it is a 'heavily fact-intensive' analysis.") (citing cases). For this reason, "some courts have held that it is improper to resolve the issue at the motion to dismiss stage." *Century Int'l Arms Inc. v. XTech Tactical LLC*, No. CV-18-03404-PHX-GMS, 2019 WL 2269392, at *2 (D. Ariz. May 28, 2019); *see also SCG Characters LLC v. Telebrands Corp.*, 2015 WL 4624200, at *7 (C.D. Cal. 2015) ("Because, ordinarily, the functionality inquiry is heavily fact-intensive, courts have held that this issue cannot be resolved at the motion to dismiss stage."). But when a plaintiff fails to offer little more than conclusory statements in support of nonfunctionality, a Court may conclude that plaintiff has failed to plead sufficient facts and may dismiss the claim. *Crafty Prods., Inc. v. Fuqing Sanxing Crafts Co.*, 839 F. App'x 95, 98 (9th Cir. 2020) ("Appellants repeatedly asserted that their trade dresses were 'nonfunctional' and that the design features were 'not essential to the function of the product, do not make the product cheaper or easier to manufacture, and do not affect the quality of the product.' The district court was not required to accept as true Appellants' legal conclusion that the trade dresses were nonfunctional or the additional conclusory statements offered to support nonfunctionality. . . . The court must view the facts in the light most favorable to the plaintiff, but it cannot do so where the plaintiff has pled no facts.").

Here, Plaintiffs have sufficiently pled functionality. Plaintiffs "acknowledge[], as [they] must, that elements of [their] trade dress are functional." Dkt. 30 at 14. For example, they point to the play building structures. *Id.* Alone, these structures are functional. But, combined with

nonfunctional elements to create an overall image, the claimed elements become nonfunctional. *See, e.g.*, *Lepton Labs*, 55 F. Supp. 3d at 1238 (citing *Fuddruckers*, 826 F.2d at 842).

Yet Defendants argue that "Plaintiff's pleading is inconsistent." Dkt. 27 at 12. They maintain that "although PSM alleges its trade dress consists of 'play buildings and structures,' it also alleges these play building structures are 'functional.'" *Id.* (comparing Dkt. 20 ¶¶ 11, 12) "But it then claims these elements are 'non-functional.'" *Id.* (citing Dkt. 20 ¶ 37). Defendants also point to functions of the décor PSM claims, such as the "display board with slats and removable vinyl letters." *Id.* Defendants claim that this is a "clear reference to the functionality in the furniture." *Id.* And they point to Plaintiffs' allegation that "Defendants have selected trade dress and operational elements from the PSM Trade Dress, including . . . trim and functional décor with what appears to be the exact color of vinyl wood flooring." *Id.* (citing Dkt. 20 ¶ 37). Defendants thus contend that Plaintiffs are alleging that their trade dress claim covers "operational elements" and "functional décor"—two things "plainly outside the scope of trade dress protection and the antithesis of the required factual pleading." *Id.*

Were the Court charged to look only at the individual elements of the trade dress claim, Defendants argument would hold true. But that is not the case. The Ninth Circuit has repeatedly held that the "fact that individual elements of the trade dress may be functional does not necessarily mean that the trade dress as a whole is functional; rather, 'functional elements that are separately unprotectable can be protected together as part of a trade dress.'" *Clicks Billiards*, 251 F.3d at 1259 (quoting *Fuddruckers*, 826 F.2d at 842).

*Clicks Billiards* is instructive. There, the Ninth Circuit explained that many of the elements that constituted Clicks' claimed trade dress were functional: lamps illuminating pool tables and counters for customers to place the drinks. *Id.* Of course, these elements could not be claimed as nonfunctional, and Clicks could not "claim a monopoly" over the "particular type of

lamps or counters" it used. *Id.* Clicks could not prevent others from copying these "purely functional aspects." *Id.* But it could "'claim[ ] as its mark the particular combination and arrangement of design elements' that distinguish it from others using the same concept." *Id.* (quoting *Fuddruckers*, 826 F.2d at 842). Clicks could "prevent competitors from using the items in a way that, viewed as a whole, is likely to confuse consumers." *Id.* (quoting *Fuddruckers*, 826 F.2d at 843 n.7).

Such is the case here. Plaintiffs have combined functional elements with both functional and nonfunctional features to create an overall product image that distinguishes Plaintiffs from other facilities and possible competitors. *See* Dkt. 20 ¶¶ 9–10, 12, 14–15. The play buildings and structures may serve a functional purpose, *id.* ¶¶ 11–12, as might the "display board with slats and removable vinyl letters," *id.* ¶ 11. Yet when these functional elements are viewed alongside the other elements of Plaintiffs' alleged trade dress, they create a "composite tapestry of visual effects" that is nonfunctional. *Clicks*, 251 F.3d at 1259. Examining Plaintiffs' allegations, and considering the visual effect as a whole, the Court finds that Plaintiffs have sufficiently pled nonfunctionality. *See id.* (citing cases).

### 3.   *Prong Two: Secondary Meaning*

Second, Plaintiffs must plead that their trade dress has acquired secondary meaning. Trade dress can "be inherently distinctive or can acquire distinctiveness." *Saber Interactive Inc. v. Oovee, LTD.*, No. 2:21-CV-01201-JHC, 2022 WL 5247190, at *7 (W.D. Wash. Oct. 6, 2022) (citing *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 210 (2000)). "[A] mark is inherently distinctive if '[its] intrinsic nature serves to identify a particular source.'" *Id.* (quoting *Wal-Mart*, 529 U.S. at 210). "[A] mark has acquired distinctiveness, even if it is not inherently distinctive, if it has developed secondary meaning." *Id.* (quoting *Wal-Mart*, 529 U.S. at 211).

Trade dress has acquired secondary meaning "when consumers associate the design features with a particular producer." *adidas Am.*, 890 F.3d at 754 (citing *Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*, 654 F.3d 958, 967 (9th Cir. 2011)); *see also Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 873 (9th Cir. 2002) (Secondary meaning is "a mental recognition in buyers' and potential buyers' minds that products connected with the [trade dress] are associated with the same source.") (citation omitted).

Secondary meaning can be established in several ways, including "direct consumer testimony; survey evidence; exclusivity, manner, and length of use of mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant." *P & P Imports LLC v. Johnson Enterprises*, *LLC*, 46 F.4th 953, 961 (9th Cir. 2022). Secondary meaning "may be inferred from evidence relating to the nature and extent of the public exposure achieved by the designation, or from proof of intentional copying." *Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*, No. CV 15-769 PSG (SSX), 2015 WL 12731929, at *5 (C.D. Cal. May 8, 2015) (quoting *Ashlar, Inc. v. Structural Dynamics Rsch. Corp.*, No. C-94-4344 WHO, 1995 WL 639599, at *5 (N.D. Cal. Jun 23, 1995)).

Like the functionality analysis, the secondary meaning inquiry "is a question of fact" often inappropriate for disposition at the pleading stage. *See Lepton Labs*, 55 F. Supp. 3d at 1238 (quoting *First Brands*, 809 F.2d at 1383); *see also Toyo Tire & Rubber Co. v. CIA Wheel Grp.*, No. SACV150246DOCDFMX, 2016 WL 6138416, at *6 (C.D. Cal. May 6, 2016) ("Further inquiry into whether consumers *actually* associate [defendant's] trade dress with [defendant] is 'a question of fact' more appropriately addressed at a later stage in litigation.").

Defendants argue that "Plaintiff's barebones allegation that 'consumers have come to recognize PSM's design as identifying PSM and PSM Locations as opposed to competitors operating similar concepts . . . concedes others have 'similar concepts' while not identifying

how consumers view" PSM's trade dress as source-identifying. Dkt. 27 at 11. Defendants claim

that PSM's allegations are little more than "threadbare recitals of the relevant elements with no

actual factual allegation[.]" *Id.*

Defendants maintain that "PSM's allusions to distinctiveness fly directly in the face of its

own representations to the United States Patent and Trademark Office relative to the very same

application PSM cites in its FAC." *Id.* at 9. Defendants allege that in this application process,

Plaintiffs acknowledged that their trade dress is not inherently distinctive. *Id.* at 9–10. As

Plaintiffs point out in their response, this is a nonissue. Dkt. 30 at 16 n.2. ("Tiny Town focuses

much of its argument on the fact that PSM has acknowledged in connection with its application

for registration that its claimed trade dress is not inherently distinctive. . . . But that

acknowledgment has no bearing on whether PSM's trade dress is in fact distinctive and has

acquired secondary meaning, which renders PSM's trade dress protectable."). PSM need not

argue that its trade dress is inherently distinctive. Trade dress can "be inherently distinctive or

can acquire distinctiveness." *Saber Interactive Inc.*, 2022 WL 5247190, at *7 (citing *Wal-Mart

Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 210 (2000) (explaining that dress can be "inherently

distinctive *or* can acquire distinctiveness") (emphasis added)). So long as Plaintiffs can show that

the trade dress has acquired secondary meaning, they may maintain their claim. *See id.*

Plaintiffs have plausibly alleged secondary meaning. First, Plaintiffs have alleged that

Defendants copied their trade dress. Dkt. 20 ¶¶ 28, 29, 31, 33. "[P]roof of copying strongly

supports an inference of secondary meaning." *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d

609, 615 (9th Cir. 1989). This is because "[t]here is no logical reason for the precise copying

save an attempt to realize upon a secondary meaning that is in existence." *Jason Scott Collection,

Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1214 (9th Cir. 2023), *cert. denied*, 144 S. Ct.

550, 217 L. Ed. 2d 293 (2024) (quoting *Audio Fid., Inc. v. High Fid. Recordings, Inc.*, 283 F.2d 551, 558 (9th Cir. 1960)).

Plaintiffs allege that the Nelsons visited PSM locations in Beaverton and Happy Valley several times prior to opening Chicky Play Museum. Dkt. 20 ¶¶ 28, 29, 31, 33. Plaintiffs also allege that Mrs. Nelson contacted PSM Franchisor to ask about franchising opportunities. *Id.* ¶ 29. After Mrs. Nelson did not hear back, Mr. Nelson reached out again to express interest and asked for franchise disclosure documents. *Id.* ¶ 30. A PSM employee shared the documents but received no response. *Id.* Plaintiffs further claim that "Defendants have sourced the items (play buildings, play elements, toys, etc.) in their location from the exact same vendors as those used by PSM Locations despite there being a multitude of vendors providing quality, alternative children's toys and equipment." *Id.* ¶ 38. In most cases, Defendants "have selected from the variety of offerings of those same vendors the exact same products that were carefully selected by PSM to create the PSM Trade Dress." *Id.* This evidence is more than conclusory statements alleging that Defendants copied Plaintiffs' trade dress. It is sufficient to allege copying—which is enough to support an inference of secondary meaning. *Vision Sports*, 888 F.2d at 615.

Defendants in response argue that "PSM's allegations of copying are not probative to the inquiry." Dkt. 31 at 7. This is simply not true.

Plaintiffs have also alleged that PSM's continuous use of its trade dress has led customers to associate the trade dress with PSM. Dkt. 20 ¶ 10, 13, 21. In *Health Industries Business Communications Council Inc. v. Animal Health Institute*, the Court found that the plaintiff had sufficiently alleged secondary meaning where the complaint stated, "[a]s a result of [Plaintiff's] continuous, widespread, and exclusive use of a 9-digit alphanumeric identifier for healthcare trading partners for over thirty years, . . . customers have come to associate any 9-digit alphanumeric identifier of a trading partner in the healthcare supply chain as being an identifier

generated by [Plaintiff]." 481 F. Supp. 3d 941, 953 (D. Ariz. 2020). There, the plaintiff also alleged customer confusion. *Id.*

Plaintiffs have similarly explained in the complaint, "[c]onsumers identify PSM locations as the foremost small format children's museums not only through the delivery of products and services but particularly by association with the PSM Trade Dress." Dkt. 20 ¶ 13. PSM alleges that the company's "deliberate efforts and purposeful choice to differentiate and distinguish itself, its locations, and its services allowed PSM, from the outset, to create a recognizable association between PSM's unique look and feel and its excellent operating practices, services, and products." *Id.* ¶ 10. And, over the ten years that Plaintiffs have used the trade dress, the company "has garnered a highly desirable reputation with consumers, as well as with prospective future franchisees, as superior to other competitors in the market." *Id.* This is no different from the allegations found sufficient in *Health Industries*. 481 F. Supp. 3d at 953.

Coupled with the allegations of consumer confusion (explained below), the Court finds that the allegations in the complaint are enough to establish secondary meaning. "Secondary meaning can also be established by evidence of likelihood of confusion" because they are "related determinations . . . rising from the same evidentiary findings." *P & P Imports LLC*, 46 F.4th at 962 (quoting *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1015–16 (9th Cir. 1985)). Though the Court separates the analysis here, likelihood of confusion points to a similar finding: Plaintiffs have sufficiently plead secondary meaning at this stage.

### 4.    Prong Three: Likelihood of Confusion

The likelihood of confusion factor "turns on whether a reasonably prudent consumer would be confused about the source of the goods bearing the marks." *adidas Am.*, 890 F.3d at 755 (citing *DreamWorks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998)). "The Ninth Circuit has identified eight factors ('the *Sleekcraft* factors') to help guide the analysis

to determine whether such confusion is likely: (1) the similarity of the mark(s) or trade dress, (2) the strength of the mark(s) or trade dress, (3) evidence of actual confusion, (4) the proximity or relatedness of the goods, (5) the degree to which the marketing channels used for the goods converge, (6) the type of goods and the degree of care likely to be exercised by the purchasers, (7) the defendant's intent in selecting the mark or trade dress, and (8) the likelihood of expansion of the product lines." *Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*, 741 F. Supp. 2d 1165, 1177–78 (C.D. Cal. 2010) (*citing AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979)). Each of these factors need not be present. Rather "only a subset of the *Sleekcraft* factors are needed to reach a conclusion as to whether there is a likelihood of confusion." *adidas Am.*, 890 F.3d at 756 (quoting *GoTo.com v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000)).

"The first *Sleekcraft* factor is of considerable importance to the likelihood of confusion analysis, given that 'the greater the similarity between the two marks at issue, the greater the likelihood of confusion.'" *Id.* at 755 (quoting *GoTo.com*, 202 F.3d at 1206). The similarities in trade dress between PSM and Chicky Play Museum "are unmistakable." *See id.* Both play museums share the same overall aesthetic—white walls, white and beige décor, green checkered rugs, light brown vinyl wood flooring, and nearly identical play building and components. Dkt. 20 ¶ 35–37. Minor differences, including more colorful play buildings, *id.*, "do not negate the overall impression of similarity between these two" entities. *adidas Am.*, 890 F.3d at 755 (citing *Clicks Billiards*, 251 F.3d at 1259) ("[T]he issue is not whether defendant's package or trade dress is identical to plaintiff's in each and every particular. Rather, it is the similarity of the *total*, overall impression that is to be tested[.]").

Other *Sleekcraft* factors also favor Plaintiffs. "Related goods are generally more likely than unrelated goods to confuse the public as to the producers of the goods." *Id.* at 755 (quoting *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1055 (9th Cir. 1999)).

1
2
3
4

"Related goods are those products which would be reasonably thought by the buying public to come from the same source if sold under the same mark." *Id.* (quoting *Sleekcraft*, 599 F.2d at 348 n.10) (cleaned up). Coupled with the third *Sleekcraft* factor—evidence of actual confusion—the relationship between the two goods is clear.[1]

5
6
7
8
9
10
11
12

Plaintiffs allege that the infringing use has caused confusion: "the Chicky Play Museum Location was brought to PSM's attention initially by several customers of the franchised Happy Valley, Oregon PSM Location, who commented on the stark similarities between the two locations." Dkt. 20 ¶ 45. Further, Plaintiffs detail an incident in which a "Chicky Play Museum customer believed in making their reservation that they were doing so at a Play Street Museum. The customer arrived at the Play Street Museum in Happy Valley for a playtime reservation with a printed confirmation of their reservation that was actually made for a playtime reservation at Chicky Play Museum." *Id.* ¶ 46.

13
14
15

Plaintiffs also pleaded facts, detailed above, that Defendants copied their trade dress. "Courts almost unanimously presume a likelihood of confusion based on a showing of intentional copying." *Jason Scott Collection*, 68 F.4th at 1219.

16
17
18

Thus, the Court concludes that Plaintiffs have sufficiently plead likelihood of confusion. Plaintiffs have pleaded every element of a trade dress claim. Defendants motion to dismiss PSM's trade dress claim is DENIED.

19

**E.  Federal Service Mark Infringement**

20

   *1.    Federal Service Mark Claim under the Lanham Act*

21
22

The Court next turns to the Defendants' motion to dismiss Plaintiffs' federal service mark, or trademark, claims. The basic principle underlying federal and state trademark law is

23
24

---

[1] Evidence of actual confusion may be the most important factor. *Fuddruckers*, 826 F.2d at 845 ("Evidence of actual confusion is persuasive proof that future confusion is likely.").

"that distinctive marks—words, names, symbols, and the like—can help distinguish a particular artisan's goods from those of others" and that the "[o]ne who *first* uses a distinct mark in commerce" thereby "acquires rights to that mark." *Lodestar Anstalt v. Bacardi & Co. Ltd*., 31 F.4th 1228, 1236 (9th Cir. 2022) (citing cases).

To prevail on a trademark infringement claim under the Lanham Act, a plaintiff must prove: "(1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion, thereby infringing upon the [plaintiff's] rights to the mark." *Dep't of Parks and Recreation for Cal. v. Bazaar Del Mundo Inc*., 448 F.3d 1118, 1124 (9th Cir. 2006) (citing *Levi Strauss & Co. v. Blue Bell, Inc*., 778 F.2d 1352, 1354 (9th Cir. 1985) (en banc)).

As to proof of ownership, "federal registration provides 'prima facie evidence' of the mark's validity and entitles the plaintiff to a 'strong presumption' that the mark is a protectable mark." *Zobmondo Ent., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010) (citing 15 U.S.C. §§ 1057(b), 1115(a)). If a plaintiff shows federal registration of a mark, the burden shifts to the defendant to show that "the mark is not protectable." *Id.* Here, PSM alleges that it has a federal mark registration for "Play Street Museum," both in name and in the stylized logo, Dkt. 20 ¶ 18, and it has produced evidence of the mark's registration. *Id.* Accordingly, Plaintiff has shown a protectable ownership interest.

"The 'likelihood of confusion' inquiry generally considers whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin or source of the goods or services bearing one of the marks or names at issue in the case." *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1209 (9th Cir. 2012). Because PSM alleges that consumers are likely to be confused about its association with Chicky Play Museum, *see* Dkt. 20 ¶¶ 44–52, PSM appears to allege its trademark claim under a theory of "forward confusion." *See Marketquest Grp., Inc. v.*

*BIC Corp.*, 862 F.3d 927, 932 (9th Cir. 2017) ("Forward confusion occurs when consumers believe that goods bearing the junior mark came from, or were sponsored by, the senior mark holder.").

The plaintiff must show that the defendant's "actual practice is likely to produce confusion in the minds of consumers." *KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 117 (2004); *see also Murray v. Cable Nat'l Broad. Co.,* 86 F.3d 858, 861 (9th Cir. 1996) ("The confusion must be probable, not simply a possibility.") (internal quotation marks omitted). Courts in the Ninth Circuit again consider the *Sleekcraft* factors here. *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1145 (9th Cir. 2011) (quoting *AMF Inc.*, 599 F.2d at 348–49). The *Sleekcraft* factors are "'pliant,' illustrative rather than exhaustive, and best understood as simply providing helpful guideposts." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.,* 618 F.3d 1025, 1030 (9th Cir. 2010); *see also Rearden*, 683 F.3d at 1209 ("A determination may rest on only those factors that are most pertinent to the particular case before the court."). The factors "present[] a highly factual inquiry." *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1161 (9th Cir. 2021).

On the face of the complaint, Plaintiffs have met the pleading standard for a trademark infringement claim. Much of this analysis is similar to the trade dress analysis above. *adidas Am.*, 890 F.3d at 755 ("Likelihood of confusion in the trade dress context is evaluated by reference to the same factors used in the ordinary trademark context[.]") (citations omitted). PSM has alleged that the Parties' marks have caused confusion, Dkt. 20 ¶ 45–46, that the marks are similar, *id.* ¶ 35, that the marks are used in the same types of goods and services, *id.* ¶ 13, 16, 26, 44, 47, 62, that their services target the same customers, *id.* ¶¶ 45–46, and that the services have similar functions, *see id.*; *see Kythera Biopharmaceuticals, Inc. v. Lithera, Inc*., 998 F.

Supp. 2d 890, 901 (C.D. Cal. 2014) (similar). "These alleged facts tend to show a likelihood of confusion and therefore plausibly support Plaintiff's claims." *Kythera*, 998 F. Supp. 2d. at 901.

But Defendants urge that Plaintiffs have no valid claim for infringement, because Plaintiffs disclaimed any exclusive rights to the words "play" and "museum" separate from its full trademarks. Dkt. 27 at 15–16. Plaintiffs allege that "Defendant's Chicky Play Museum logo is confusingly similar to the Plaintiffs' PLAY STREET MUSUEM mark, incorporating the words 'play' and 'museum' in that order and using an almost identical font." Dkt. 20 ¶ 35. Defendants correctly point out that a "disclaimer shows that the applicant enjoys no exclusive rights to the disclaimed [portion of the mark] apart from the composite mark . . . The applicant's competitors in the same trade must remain free to use [the] descriptive terms without legal harassment." Dkt. 27 at 14 (quoting *Dena Corp. v. Belvedere Intern., Inc.*, 950 F.2d 1555, 1560 (Fed. Cir. 1991)). Thus, Defendants urge, because Plaintiffs have disclaimed the words 'play' and 'museum', the two words included in Chicky Play Museum's name, Plaintiffs "now cannot maintain an action simply because its competitors" use those same words. *Id.* at 15. In their response, Plaintiffs do "not dispute that [they have] disclaimed any exclusive rights" to the words 'play' or 'museum' apart from the entirety of its registered marks." Dkt. 30 at 19. But, Plaintiffs explain, "that disclaimer does not bar PSM's claim for infringement of its registered marks against Tiny Town." *Id.*

The Ninth Circuit has long held that "[d]isclaimed material forming part of a registered trade-mark cannot be ignored. It is still part of the composite trade-mark which must be considered in its entirety." *Sleeper Lounge Co. v. Bell Mfg. Co.*, 253 F.2d 720, 724 n.1 (9th Cir. 1958) (first citing *P. D. Beckwith's Estate v. Comm'r of Patents*, 252 U.S 538 (U.S. 1920); and then citing *Van Camp Sea Food Co. v. Westgate Sea Products*, 28 F.2d 957 (9th Cir. 1928)). Still, courts in this circuit "do not analyze whether marks are confusingly similar by only

comparing the words in common between the marks." *Advanced Hair Restoration LLC v. Bosely Inc.*, No. C23-1031-KKE, 2023 WL 9024196, at *2–3 (W.D. Wash. Dec. 29, 2023) ("The Ninth Circuit does not ignore disclaimed terms when considering whether a likelihood of confusion exists."). Rather, what matters is "the *overall* appearance of the mark as used in the marketplace[.]" *Id.* (quoting *Playmakers, LLC v. ESPN, Inc.*, 297 F. Supp. 2d 1277, 1283 (W.D. Wash. 2003), *aff'd*, 376 F.3d 894 (9th Cir. 2004)). Thus, the Court cannot limit its consumer confusion analysis to the words "play" and "museum." *See id.* (similar).

The court's analysis in *Advanced Hair Restoration LLC v. Bosley Inc.* is instructive. 2023 WL 9024196, at *2–3. There, Defendant Bosley argued that Plaintiff Advanced Hair Restoration (AHR's) trademarks were invalid because they were confusingly similar to Bosley's trademarks for "The Art and Science of Hair Restoration" and "The World's Most Experienced Hair Restoration." *Id.* at *2. Both were used by Bosley before AHR, but Bosley had expressly disclaimed the generic term "hair restoration." *Id.* AHR thus argued that the court "should ignore any disclaimed words" and compare only the remaining words. *Id.* at *3. The court, citing Ninth Circuit law, disagreed. *Id.* (citing *Sleeper Lounge*, 253 F.2d at 722 n.1). And the court, comparing the two trademarks, found that consumers could be confused between "Advanced Hair" or "Advanced Hair Restoration" and "The Art and Science of Hair Restoration" and "The World's Most Experienced Hair Restoration." *Id.* The court explained that "[t]hese trademarks are not as different as 'Pepsi' and 'Coke.' . . . That is enough at this stage of the proceedings." *Id.* (internal citations omitted).

Here too, the names are far more similar than Coke and Pepsi. *See id.* Plaintiffs named their facility "Play Street Museum," while Defendants named their facility "Chicky Play Museum." Dkt. 20 ¶ 33. Plaintiffs allege that the name and logo are "confusingly similar," using the words "play" and "museum" in that order and using an "almost identical font[.]" *Id.* ¶ 35.

The two marks are much more like "Advanced Hair Restoration" and "The Art and Science of Hair Restoration." *Advanced Hair Restoration*, 2023 WL 9024196, at *2–3. Including the disclaimed words in the Court's analysis, as it is required to do, the Court finds that consumers could be confused by "Play Street Museum" and "Chicky Play Museum." *See id.* The nearly identical fonts may also create confusion. Dkt. 20 ¶ 61.

Still, Defendants point to *Metamorfoza D.O.O. v. Big Funny, LLC* to maintain that PSM cannot sustain this claim. Dkt. 27 at 16 (citing *Metamorfoza D.O.O. v. Big Funny, LLC*, 2022 WL 16756362, at *1 (9th Cir. Nov. 8, 2022)). In *Metamorfoza*, the owner of the mark had disclaimed all three words in its mark: "Museum of Illusions." *Metamorfoza D.O.O. v. Big Funny, LLC*, Case No. CV-21-2020- JFW(RAOx), 2021 WL 4572039, at *1 (C.D. Cal., July 27, 2021). The opposing party's mark was also "Museum of Illusions." *Id.* at *2. In obtaining the registration for their mark, the plaintiff expressly disclaimed the "exclusive right to use the words 'MUSEUM OF ILLUSIONS' separate and apart from" its logo. *Id.* at *4. The court there thus explained:

> Apparently recognizing that it must allege that Defendants used something more of its MMOI Design Mark than the disclaimed words, Metamorfoza argues that Defendants' MUSEUM OF ILLUSIONS mark misappropriates aspects of its registered mark other than the disclaimed words "MUSEUM OF ILLUSIONS." Opposition at 14-15 (quoting SAC ¶ 40 alleging that "Defendants selected a highly similar stylized logo to the Plaintiff's, using brightly-colored geometric solids and geometric figures to form letters."). Metamorfoza, however, does not plausibly allege any similarities between the parties' marks other than the disclaimed words "MUSEUM OF ILLUSIONS."

*Id.* The Court thus concluded that there were no similarities other than the disclaimed words.

That is not the case here. The similarities alleged include the ordering of the words that are disclaimed in isolation and the stylized logo/font. Dkt. 20 ¶ 61 ("Defendants are willfully, intentionally, and knowingly providing a service identical to the services being offered by PSM and PSM Franchisor using a mark – CHICKY PLAY MUSEUM – that is similar in sight, sound,

and appearance to the PSM Mark – PLAY STREET MUSEUM. Moreover, Defendants' mark is presented in a handwritten font that is almost identical to the handwritten font used by PSM and PSM Franchisor to display the PSM Mark[.]"). *Metamorfoza* thus does not provide an apt comparison.

Defendants argue that the second and eighth *Sleekcraft* factors (proximity of goods and likelihood of the product lines' expansion) cut against finding that Plaintiffs have pled an infringement claim. Dkt. 27 at 13 n.3. But a "determination may rest on only those factors that are most pertinent to the particular case before the court." *Rearden*, 683 F.3d at 1209. The Court need not find that Plaintiffs have pled every factor, nor that every factor would favor a trademark infringement claim. *See id.* The Court finds that PSM has plausibly alleged that the marks are similar (factor 3); that there has been actual confusion (factor 4); and that Defendant's intent in selecting the mark was to copy PSM (factor 7). The Court finds that, at this stage, Plaintiffs have sufficiently pled a trademark infringement claim under the Lanham Act. Defendants' motion to dismiss the trademark claim is DENIED.

### 2.    Federal Service Mark Claim under Common Law

Plaintiffs also allege service mark infringement of their federally registered marks under 15 U.S.C. § 1114, which creates common law trademark rights. Dkt. 30 at 22; Dkt. 20 ¶¶ 66–68. Here too, Plaintiffs have sufficiently pled a common law trademark case.

To start, disclaimer is a nonissue. Just as with trademark claims under the Lanham Act, for those under common law, disclaimer "does not deprive" a trademark of "any common law rights." *Off. Airline Guides, Inc. v. Goss*, 856 F.2d 85, 87 (9th Cir. 1988) (citations omitted); *see also Vans Inc. v. ACI Int'l*, No. 8:21-CV-01876-DOC (ADS), 2023 WL 6930323, at *8 (C.D. Cal. Oct. 11, 2023) (discussing and following *Goss*, 856 F.2d at 86–87).

To establish a protectible ownership interest in a common law trademark, the owner must "establish not only that he or she used the mark before the mark was registered, but also that such use has continued to the present." *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 599 (9th Cir. 2014) (quoting *Watec Co., Ltd. v. Liu*, 403 F.3d 645, 654 (9th Cir. 2005)). Continuous usage requires sufficiently public usage as "to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." *Id.* (quoting *Brookfield Commc'ns*, 174 F.3d at 1052); *see Sugarfina, Inc. v. Sweet Pete's LLC*, No. 17-CV-4456-RSWL-JEM, 2017 WL 4271133, at *5 (C.D. Cal. Sept. 25, 2017) ("However, in arguing that the marks are generic, Defendants ignore the 'widely-shared stance that a Rule 12(b)(6) motion is generally an improper vehicle for establishing that a mark is generic or functional.'" (quoting *Pinterest Inc. v. Pintrips Inc.*, 15 F. Supp. 3d 992, 999 (N.D. Cal. 2014))).

Plaintiffs have done so here. They have established that they began using the marks in 2014, Dkt. 20 ¶ 18, registered the marks in 2015, 2016, 2017, and 2021, *id.*, and have continued to use the marks publicly since. *See id.* Thus, Defendants motion to dismiss Plaintiffs' common law service mark infringement claim is DENIED.

## F.    Federal Unfair Competition and Common Law Deceptive Trade Practices Claims

Defendants next argue that Plaintiffs' claims for unfair competition and deceptive trade practices under federal common law, relative to its alleged trade dress, trademark, and service system, should be dismissed because they are "substantially congruent" to claims made under the Lanham Act. Dkt. 27 at 17 (quoting *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994). In response, Plaintiffs "acknowledge[] that its common law trade dress rights mirror its rights under federal law." Dkt. 30 at 23. Still, Plaintiffs assert that they have "alleged a valid

claim for federal trade dress infringement" and, accordingly, "PSM has stated a claim for common law trade dress infringement." *Id.* at 23–24.

"[A] common law unfair competition claim for trademark exploitation is analogous to a Lanham Act claim and may be analyzed under the same standard." *Basketball Skill Dev., LLC v. K Mart Corp.*, No. 16-cv-04895-WHO, 2017 WL 2775030, at *3 (N.D. Cal. June 27, 2017); *see also Kythera*, 998 F. Supp. 2d at 897 ("[T]he courts have uniformly held that common law and statutory trademark infringement are merely specific aspects of unfair competition.") (citing cases). Courts often analyze these claims together, "as courts have uniformly held that common law and statutory trademark infringement are both aspects of unfair competition." *Erickson v. Enviro Tech Chem. Servs., Inc.*, No. 1:23-CV-03118-MKD, 2024 WL 898881, at *8 (E.D. Wash. Mar. 1, 2024) (citing *New W. Corp. v. NYM Co. of California, Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1979)).

As explained at length above, Plaintiffs have adequately pled their trade dress and trademark claims under the Lanham Act. The Court thus concludes that Plaintiffs have also sufficiently pled their common law unfair competition claim for trademark exploitation. Defendants' motion to dismiss is DENIED.

## G.    State Unfair Competition Laws Claims

Plaintiffs bring claims under both the Washington Consumer Protection Act (WCPA) and Texas common law for unfair competition and misappropriation. Dkt. 20 at 29–30. Defendants have not fully raised or briefed a choice of law question. Defendants mention that PSM "does not actually plead that Texas law applies." Dkt. 27 at 18. Plaintiffs respond in a footnote:

> PSM is unaware of any pleading standard that obligates it to affirmatively allege the applicable law (nor does Tiny Town cite any case in support of this argument). However, it is clear from the heading of Count Six that PSM are asserting its claim for unfair competition and misappropriation under Texas

common law. . . . In any event, PSM have also alleged that it is a Texas entity with its principal place of business in Texas.

Dkt. 30 at 24 n.4. Defendants reply, "PSM objects to Defendants' argument concerning the relevant law. Defendants continue to be unclear as to PSM's claims. Defendants have no connection to Texas and are still unclear as to why or how Texas law applies to their alleged actions. This claim should be dismissed for its failure to articulate that rationale alone. Defendants are not on 'fair notice.'" Dkt. 31 at 10 (citing *Twombly*, 550 U.S. at 555). Defendants provide no case law to support their argument, absent a citation to *Twombly*, and they do not develop these issues further. *See id.*

Defendants may move to dismiss the Texas claim if they contend that Texas law cannot extend to them. But right now, they have not done so. They have moved to dismiss based only on the sufficiency of the factual allegations. Thus, the Court proceeds with its analysis of the pleadings without addressing the applicability of Texas law.

First, the Court finds that Plaintiffs have adequately pled a WCPA claim. To plead a claim under the WCPA, Plaintiffs must allege "(1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." *Shields v. Fred Meyer Stores Inc.*, 741 F. Supp. 3d 915, 930 (W.D. Wash. 2024) (quoting *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 37, 204 P.3d 885 (2009)). Private plaintiffs relying on the WCPA must establish all five elements for their claim to survive a motion to dismiss. *Id.* (citing *Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784, 719 P.2d 531 (1986)).

Courts have long held that allegations of trademark and trade dress infringement satisfy the "unfair or deceptive act or practice" and "occurring in trade or commerce" prongs. *Nat'l Prods., Inc. v. Arkon Res., Inc.*, 294 F. Supp. 3d 1042, 1050-51 (W.D. Wash. 2018), *aff'd*, 773 F.

App'x 377 (9th Cir. 2019) ("jury's finding that [plaintiff's] trade dress was valid and infringed by [defendant]" satisfied the first and second elements of a CPA claim); *Nordstrom, Inc. v. Tampourlos*, 107 Wn.2d 735, 740, 733 P.2d 208 (1987) ("trade name infringement [is] an unfair or deceptive act" under the WCPA). The plaintiff, after all, "'need not show that the act in question was intended to deceive,' but only that 'the alleged act had the capacity to deceive a substantial portion of the public.'" *Nat'l Prods., Inc.*, 294 F. Supp. 3d at 1050 (quoting *Hangman Ridge*, 105 Wn. 2d at 785).

Courts have also held that "the analysis of an unfair competition claim under Washington's Consumer Protection Act will generally follow that of a federal trademark infringement claim, and will turn on the likelihood of consumer confusion regarding the protectable mark." *Multifab, Inc. v. ArlanaGreen.com*, 122 F. Supp. 3d 1055, 1067 (E.D. Wash. 2015) (citation omitted). Given the likelihood of confusion analysis described above, the Court finds that Plaintiffs have satisfied the pleading requirements for their WCPA claim. Defendants motion to dismiss is DENIED.

Second, the Court also finds that Plaintiffs have adequately pled a claim under Texas common law for unfair competition and misappropriation. Similarly, "[u]nfair competition claims under Texas law are analyzed under the same standard as claims under the Lanham Act." *S & H Indus., Inc. v. Selander*, 932 F. Supp. 2d 754, 763 (N.D. Tex. 2013) (citations omitted). "A trademark infringement and unfair competition action under Texas common law presents essentially 'no difference in issues than those under federal trademark infringement actions.'" *Sunteck/TTS Integration LLC v. Sunteck Transportation Inc.*, No. 3:23-CV-282-K, 2024 WL 628024, at *8 (N.D. Tex. Jan. 22, 2024), report and recommendation adopted, No. 3:23-CV-282-K, 2024 WL 628852 (N.D. Tex. Feb. 14, 2024) (citing *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 n.7 (5th Cir. 2010)). But "in Texas, common law unfair competition

is an umbrella cause of action arising out of dishonest business conduct." *Id.* (quoting *Transparent Energy LLC v. Permiere Mktg. LLC*, No. 3:19-cv-3022-L, 2020 WL 4678438, at *9 (N.D. Tex. July 28, 2020)). Texas courts have held that "having . . . sufficiently alleged a likelihood of confusion" to consumers, a party has "adequately alleged common law unfair competition." *Id.* As explained above, Plaintiffs have sufficiently pled likelihood of confusion.

Plaintiffs have also sufficiently claimed common law misappropriation under Texas law. The elements of a claim for unfair competition by misappropriation in Texas are: "(i) the creation of plaintiff's product through extensive time, labor, skill and money, (ii) the defendant's use of that product in competition with the plaintiff, thereby gaining a special advantage in that competition (*i.e.*, a 'free ride') because defendant is burdened with little or none of the expense incurred by the plaintiff, and (iii) commercial damage to the plaintiff." *Worth Beauty LLC v. Allstar Prods. Grp., LLC*, No. 4:17-CV-1682, 2017 WL 5300007, at *9 (S.D. Tex. Nov. 13, 2017) (quoting *Dresser–Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 839 (5th Cir. 2004)).

Much of Defendants' argument pertaining to the misappropriation claim is "premised on [PSM's] failure to adequately allege its trademark and trade dress infringement claims," and so "is without merit." *Id.*; *see* Dkt. 27 at 18 ("To the extent Plaintiff is pleading yet another iteration of trade dress infringement, it should be dismissed for the reasons already discussed.").

Further, the factual allegations in the complaint are enough to state a claim for common law misappropriation under Texas law. PSM alleges that it has made a substantial investment in the design, development, manufacture, and marketing of its trade dress and system, Dkt. 20 ¶¶ 7, 13, 25, that Defendants have created a possibly infringing facility, *id.* ¶¶ 33–39, and that PSM has been damaged as a result of Defendants' appropriation of their trade dress and trademark. *Id.* ¶¶ 45–46, 50–52; *see also Worth Beauty*, 2017 WL 5300007, at *10 (similar). "These allegations, taken together, support a plausible claim for misappropriation." *Id.*

Thus, Defendants' motion to dismiss PSM's Texas common law claim is DENIED.

## V.   CONCLUSION

For these reasons, Defendants' motion to dismiss is DENIED.

Dated this 26th day of February, 2025.

Tiffany M. Cartwright
United States District Judge

ORDER DENYING MOTION TO DISMISS - 37